HOWARD WHITE & others *vs.* LEONARD CLAPP

When heirs agree that commissioners, who are appointed by a judge of probate to divide the real estate of their ancestor, shall assign the greater part to the eldest son, on his paying them such sums of money as the commissioners shall award, to make the partition just and equal, and the estate is so assigned, and they receive the money awarded to them, they thereby waive their strict legal rights, and cannot afterwards, when the rights of others are affected, avoid the division by showing that the estate might have been divided among all of them without great prejudice to the whole.

When commissioners, appointed by a judge of probate to divide real estate among heirs, make a return, in which they set forth, by metes and bounds, the several tracts assigned by them to part of the heirs, and also specify the sums of money which they award to the other heirs, and all the parties are present and approve the division, and the judge certifies, upon the return, under his hand, that " the foregoing division, having been duly considered, is hereby ratified and confirmed," the division cannot afterwards be invalidated for want of a more formal and technical decree of division.

When an unequal portion of real estate, which is ordered by a judge of probate to be divided among heirs, is assigned to one of them, and he is ordered to pay money to the others, to make the division just and equal, although the division is voidable, even after a decree is passed, assigning the estate according to the division, if the money is not paid or secured, yet if the heirs to whom the money was ordered to be paid subsequently receive it, or security for it, or do other acts of record, or *in pais*, which they cannot avoid, they thereby ratify the division, and cannot afterwards avoid it.

WRIT OF ENTRY, dated April 7th 1844, to recover four undivided sixth parts of three parcels of land in Scituate, formerly part of the estate of Timothy White, and of which he died seized.

At the trial before *Hubbard*, J. it was agreed by the parties that Timothy White died on the 5th of April 1824, leaving six children, namely, Timothy his oldest son, Almira, Catharine Oakman, Sarah, Howard, and Joseph who was a minor at the time of his father's death. The four latter were the demandants in this action.

The tenant, to maintain his defence, showed an application,
31 *

made to the judge of probate by one or more of the heirs of Timothy White, for a division of his real estate; and also offered in evidence a copy of the return of a division thereof, bearing date September 7th 1824, and signed by John B. Turner, Samuel A. Turner and Jesse Dunbar, purporting to be made " pursuant to a warrant from the judge of the probate of wills for the county of Plymouth, after giving notice to all persons interested," and after taking a view of said estate, and "finding that it could not be divided into six equal parts without manifest injury to the whole." In this return, the committee stated that, " by the request of all interested," they had " divided the same as follows : " To Timothy White the homestead, containing about twenty acres ; also one acre back of the new house, and also the great pasture ; (with metes and bounds to each tract ;) " to have, hold and enjoy the same, on condition that he shall pay to his sister Catharine Oakman $524·29; to his brother Howard White $524·29; to his brother Joseph White $219·29; to his sister Almira White $474·29 ; and to his sister Sarah White $279·29." The sums above directed to be paid by Timothy to Catharine O. and Howard, were assigned to them, respectively, as their share of said estate. To Almira, Sarah and Joseph, severally, the committee assigned and set off certain other lands which belonged to said Timothy, their father, which lands, together with the sums directed as above to be paid to them, severally, by said Timothy, their brother, were stated to be the full share of each of them in said estate.

The copy of this division was verified by the register of probate, who testified that it was duly recorded ; that he had examined the books in the probate office, and could not find on record any *warrant* for the division of said estate, but that a blank space for it had been left on the record ; that he had also searched the files of the office, and could find no warrant on file ; but that he found the original return of the committee who divided said estate. On this return was the following entry : " Plymouth, ss. September 7th 1824. The foregoing division of the real estate of Timothy White, deceased, having been sworn to as certified on the warrant, and

the same being duly considered, is hereby ratified and confirmed. Wilkes Wood, J. Probate." And underneath the same was the following agreement: " We the subscribers do hereby agree to and approve the aforegoing division of the estate of Timothy White, deceased. Charles Turner, guardian to Joseph. Almira White. Timothy White. Sarah White. Catharine Oakman Howard White."

John B. Turner and Samuel A. Turner, two of the committee who divided said estate, were called as witnesses, by the tenant, and they testified that Jesse Dunbar, the other member of the committee, was dead; that they well remembered making the division; that Howard White especially requested that his share should be set off to his brother Timothy; that the other heirs wished that the farm should be assigned to him, as he bore the name of Timothy, and the estate had been owned by Timothy White, for six generations preceding him; that the division made by the committee was made known to the heirs; and that they all approved of it, and signified in writing, on the same paper, their agreement to the same.

It was proved, or admitted, that Joseph White was a minor, when said division was made, and that Charles Turner was duly appointed his guardian on the 1st of June 1824.

The tenant then offered to read to the jury the original division of the estate, but the demandants objected thereto, on the ground that no evidence was given that Timothy White had paid the other heirs the moneys awarded to them for owelty of partition; that no decree of partition had been made by the judge; and that the title to the real estate would not pass by virtue of such partition. The tenant then offered in evidence the deed of said Sarah (then Sarah Orcutt) and her husband, Gershom Orcutt, to John Thomas, dated January 24th 1825, acknowledged on the same day, and recorded May 27th 1825, of a part of the land assigned to her by said committee, and the further deed of said Sarah to her brother Howard White, dated August 6th 1831, and duly acknowledged and recorded, of the residue of the land set off to her on said division.

The tenant also offered evidence that said Joseph White, after

he was twenty one years old, viz. on the 8th of June 1829, conveyed to said Howard White, by deed duly acknowledged and recorded, that portion of real estate which had been set off to said Joseph by said dividers.  The tenant also offered in evidence a deed from said Timothy White, dated March 29th 1825, and duly acknowledged and recorded, conveying to said Howard White an undivided piece of land and a dwelling-house, in payment of the share assigned to said Howard, and to be paid by said Timothy to him.  The tenant also proved that said Sarah and Joseph had received the balance of their shares, and that said Catharine had received the whole of her share from said Timothy.  And in regard to said Almira, to whom about four acres of land were set off, and to whom the sum of $474·29 was ordered to be paid by said Timothy, it was admitted that she had received said land ; and it was testified by John Damon, that he married said Almira, in January 1831, and that he and she make no claim to any part of the estate of said Timothy, now in possession of the tenant, but that he had a note, amounting to between three and four hundred dollars, which was given by said Timothy for said Almira's share, in part, of her father's real estate.

The tenant also put in a mortgage deed of the demanded premises, made by Timothy White to Elisha James, dated April 30th 1842, duly acknowledged and recorded, to secure the payment of $2558·92, to which deed Howard White was a subscribing witness :  Also an assignment of said mortgage deed, by said James, to the tenant, bearing date March 25th 1843, duly acknowledged and recorded :  Also the affidavits of said Howard White and of Nathaniel Clapp, dated March 27th 1843, stating that the tenant, on that day, made open and peaceable entry in and upon the mortgaged premises, for condition broken, conformably to the statute ; which affidavits were duly recorded on the 29th of March 1843.

The judge admitted in evidence the division made by the commitee, and also the abovementioned deeds, subject to the demandants' objections thereto ; and a nonsuit was thereupon entered by consent, to be set aside or confirmed by the whole court.

Coffin, for the demandants.

W. Baylies & Eddy, for the tenant.

HUBBARD, J. It is admitted, by both parties, that the judge of probate had a general jurisdiction in regard to the partition of real estate among the heirs or devisees of deceased persons, and that, upon a proper application to him, he could have lawfully directed a partition of the estate of Timothy White. It appears that there was a request to him to have the estate divided among the heirs, and that a committee was duly appointed for that purpose, who notified, met, and heard the parties, and made a return of their doings. By this return, it appears that the estate could not be divided, and set off to all the heirs, without great injury to the estate, and that, by reason of it, they set off, in their partition, the greater part to the eldest son, Timothy, and directed him to make sundry payments in money to the other heirs, for owelty of partition.

It is objected to this partition, that it does not sufficiently appear that the estate could not be divided without great prejudice to or spoiling the whole of it, and therefore the judge of probate ought not to have sanctioned the assignment made by the commissioners. See Hunt v. Hapgood, 4 Mass. 121. Smith v. Rice, 11 Mass. 507. But we are of opinion that it sufficiently appears, by the act of the heirs, that such an assignment to the eldest son was agreeable to their wishes. This, however, does not apply to the share of Joseph White, one of the demandants, who was then a minor, and was represented by his guardian. While the statute is to be construed with a strict regard to its provisions, yet where the parties waive their rights, with a knowledge of what those rights are, they cannot afterwards insist upon them when the rights of others are affected. To parties thus consenting the maxim well applies, *volenti non fit injuria.*

It is contended also that this division is void because there is no decree of the judge making the partition. This objection is founded upon the following observations of the court in the case of Thayer v. Thayer, 7 Pick. 214 : "The judge merely certifies that he approves of the report of the commissioners, and

orders it to be recorded.  We are inclined to think that, in a matter of so much importance, there ought to be a decree assigning the shares respectively, and that notice should be given, as contended for on the part of the petitioners.  We do not, however, decide these points, as many other estates, which have been already settled, might be affected by the decision." . The language of the judge of probate, in that case, was as follows: " This return being this day examined by me, I do approve thereof, and order the same to be recorded."  But in the present case, the decree of the judge is more definite.  It is this :  " The foregoing division of the real estate of Timothy White, deceased, having been sworn to, as certified on the warrant, and the same being duly considered, is hereby ratified and confirmed."  The judge here certifies that the division is duly considered by him, and he ratifies and confirms it.  Though there is no regular assignment of the several parcels according to the partition, yet it is a decree upon the return, and the parties being present and approving the same, we think the want of a more formal and technical decree cannot now be held to invalidate the proceedings.

But an objection of a more weighty character is urged against this partition, to wit, that the heirs, to whom money was to be paid to equalize their shares, did not receive it at the time, nor did the son, to whom the assignment was made, give any sufficient security therefor, as required by the statute.  This point was fully considered by the court in the case of *Newhall* v. *Sadler*, 16 Mass. 122 ; and it was decided that such an assignment by the judge of probate, without requiring sufficient security of the heir, to whom the estate is assigned, for the payment of the money awarded to the other heirs, may be avoided by them without an appeal from the decree.  Of the correctness of this decision we do not doubt.  The effect of holding otherwise would be, that some of the heirs might be deprived of their estates, without any act of theirs, and without an adequate consideration.  And if the case rested here, we could not confirm this partition.  But the judge of probate having jurisdiction of the subject, we consider that such a decree is not

simply void, but only voidable, and therefore, in order to affect it, some steps must be taken by the heirs to set it aside; and so also, it not being void, they may confirm the same, either by matter of record, or *in pais*. And we are of opinion that the parties have ratified this partition by acts which cannot now be avoided by them. They assented, at the time, to the terms of the partition, and they have since either received the money awarded to them by the assignment, or have accepted an equivalent therefor, which is a ratification. This was the case with the minor, after he came of age, as well as of the others. In regard to Mrs. Damon, one of the heirs, we think no advantage can be taken, by either of these demandants, of the fact, as alleged, that she has not received the whole of the money assigned, though her right may not be relinquished. But the doings of the judge are only voidable, and will bind those who ratify them.

*Nonsuit confirmed*